UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK M. HARTNETT & DANIEL J. HARTNETT, as Successor Trustees of the Lorrayne B. Hartnett Trust dated June 27, 1984, | |
| Plaintiffs, | No. 23 CV 1601 |
| v. | Judge Manish S. Shah |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Ninety-four-year-old Lorrayne Hartnett fell and broke her hip in May 2021. She was hospitalized and had surgery. She needed skilled nursing services for her recovery. Because of her age, other health conditions, and the COVID-19 pandemic, Hartnett's doctor did not want her to be discharged to a nursing home. Instead, he wrote a prescription for Hartnett to receive home health care. Hartnett and her late husband had taken out a long-term care insurance policy in 1998. The policy provided nursing facility benefits. It also provided an "Alternative Plan of Care" benefit which provided coverage to "end confinement in a nursing care facility and continue recovery at home." Hartnett sought an alternative plan of care for home health care to recover entirely at home instead of first entering a nursing facility. Defendant Jackson National Life Insurance Company denied her claim. Hartnett sued Jackson

1

National.[1] Both sides move for summary judgment. For the reasons discussed below, plaintiffs' motion is denied, and Jackson National's is granted.

## I.     Legal Standard

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views "the facts and draw[s] reasonable inferences in the light most favorable to the non-moving party." *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). "When both parties move for summary judgment, we take the motions one at a time, viewing the facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was made." *Ellison v. United States Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023). Summary judgment is appropriate only where the "admissible evidence considered as a whole"—no matter which motion the evidence is attached to—shows there is no genuine dispute of material fact. *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011); *Torry v. City of Chi.*, 932 F.3d 579, 584 (7th Cir. 2019) (citing *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) ("Where the parties file cross-motions for summary

---

[1] When Hartnett passed away in October 2023, her assets were held in trust. Two of her children, as trustees of Hartnett's trust, were substituted as plaintiffs pursuant to Fed. R. Civ. P. 25(a)(1). [21]; [22].

judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered.")).

## II.  Facts

Lorrayne Hartnett fell and broke her hip in May 2021. [36] ¶ 13; [39] ¶ 35.[2] She was hospitalized and underwent surgery. [36] ¶ 13. Hartnett also suffered from congestive heart failure, pulmonary fibrosis with chronic hypoxemic respiratory failure, hypertension, severe spinal stenosis, hearing loss, and sustained weakness and loss of range of motion in her left shoulder from a major rotator cuff tear. [36] ¶ 14. Hartnett's primary care physician, Dr. Philip H. Sheridan, felt that because of Hartnett's medical problems and her advanced age—she was ninety-four at the time of her fall—and the fact that the COVID-19 pandemic was ongoing, discharging Hartnett to a nursing facility would put her "in harm's way." [36] ¶ 16. Sheridan prescribed Hartnett home health care, because "it was my decision that the only

---

[2] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. When citing depositions, I also use the deposition transcript's original page numbers. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [36] and [39], where both the asserted fact and the opposing party's response are set forth in one document. Some facts are taken from Jackson National's statement of additional facts, which the plaintiffs did not respond to. [36] at 17–20. I refer to the plaintiffs' statement of facts in [36] by the paragraph number alone; I refer to the defendant's additional statement of facts by both page number and paragraph. Asserted facts need to be supported by reference to specific pages in the evidentiary record. N.D. Ill. Local R. 56.1(d)(1)–(2). Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statement of facts. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006); *see also* [36] ¶ 26; [36] at 18 (¶ 3), 19 (¶¶ 10–13, 15–17); [39] ¶¶ 24–25, 34, 43, 73–74. The parties dispute many facts, but the facts in those disputes are not all material. To the extent disputed facts are relevant and the parties rely on admissible evidence, I include both sides' versions.

safe…medically sound option for Ms. Hartnett…was that she be at home with appropriate oversight and care giving." [36] ¶ 16.[3]

Hartnett and her late husband had purchased a nursing care policy through Allied Life Insurance Company in 1998. [36] ¶ 5; [39] ¶¶ 6, 11. Jackson National assumed the policy through a series of mergers. [36] ¶ 6; [39] ¶ 7. The policy included coverage for eligible care in a nursing care or assisted living facility up to $170 a day subject to a compound cost of living increase. [36] ¶ 9; [39] ¶ 19. The policy also included an "alternative plan of care" benefit. [39] ¶ 20. This benefit included "[b]enefits for medical or non-medical Qualified Long Term Care Services payable to end confinement in a Nursing Care Facility and continue recovery at home." [36] ¶ 12; [39] ¶ 21. "Medical alternatives" under the policy "usually consist of providing services in an alternative setting." [39] ¶ 22. The policy provides that if any policy terms conflict with the laws of the state of residence of the insured as of the policy's effective date, the policy is amended to conform with those laws. [32-1] at 11; [36] ¶ 8.

To receive alternative plan of care benefits, Hartnett had to show that (1) she was receiving benefits under "this policy pursuant to a plan of care" prescribed by a physician; (2) Hartnett, her physician, and Jackson National agreed that an alternative plan of care was (a) medically acceptable and (b) the most cost efficient manner to provide benefits under the policy; (3) Hartnett had not exceeded the benefit period or maximum total lifetime benefit; (4) Hartnett had satisfied the elimination

---

[3] Jackson National disputes the underlying conclusions Sheridan made but does not dispute that he testified as such.

period in the benefit schedule; and (5) she was not receiving payments for any other benefits under the policy. [32-1] at 8.

In her policy documents, there was an option to choose either the nursing care policy or a "comprehensive long term care policy." The comprehensive care policy provided for both nursing care and home and community-based care benefits. [32-1] at 25. The comprehensive care policy also had an alternative plan of care provision. [39] ¶ 33; [35-3] at 6. The Hartnetts checked the box for the nursing care policy. [32-1] at 25. They paid $8,019.65 annually for their nursing care policy; the annual premium for the comprehensive care policy was $12,029.48. [36] at 18 (¶ 5); [39] ¶¶ 31–32; [35-2] ¶¶ 30–31.[4]

Based on her doctor's advice, Hartnett submitted a claim to Jackson National under her policy for "home health care" and "homemaker services." [36] ¶ 23; [39] ¶ 36. Jackson National requested a written "alternative plan of care" from Dr. Sheridan to explain why it was medically acceptable for Hartnett to end confinement in a nursing care or assisted living facility and continue her recovery at home. [36] ¶ 25. Sheridan wrote another letter to Jackson National where he prescribed Hartnett with an alternative plan of care, and recommended Hartnett "return to her home" to assist her with "basic life functions" like bathing, eating, dressing, going to the bathroom, cooking, and operating appliances. [36] ¶ 17; [39] ¶ 41; [35-7] at 1.

---

[4] Plaintiffs argue that these facts are based on inadmissible hearsay, but Jackson National cites to the declaration of the Vice President of Claims for LifeCare Assurance Company— the company that provides administration services related to Jackson's policies—who says he has personal knowledge of the facts in the declaration, including knowledge of the nursing care and comprehensive care policies here. [35-2] ¶¶ 3–4, 6–8, 10.

Sheridan said that in-home care would be the "most cost efficient" solution and that "Skilled Nursing Facilities and Assisted Living facilities are significantly more expensive in our geographical location than the in-home care Ms. Hartnett's family was able to secure for her through Amada Care." [36] ¶ 18; [39] ¶ 41. Sheridan did not give information about any particular facility or home care provider or their costs. [39] ¶ 43.

Jackson National denied Hartnett's claim: "After review of the terms and conditions of the policy the 'Alternative Plan of Care' would not be applicable at this time as the Policy requires you to be confined to a Nursing Care Facility and receiving benefits under the policy, pursuant to a plan of care provided by a Licensed Healthcare Professional." [36] ¶ 25; [39] ¶ 45. Jackson National also said that Hartnett's policy "does not provide benefits for home care services." [39] ¶ 46.

After the denial of her claim, Hartnett's son, Patrick Hartnett, filed a complaint with the Illinois Department of Insurance. [39] ¶¶ 54–55. The Department of Insurance sent a response, saying it "reviewed all the information related to your complaint and no violations of the Illinois Insurance Code were identified." [35-17] at 1; [39] ¶ 69.

After receiving the Department of Insurance's response, Hartnett sued Jackson National. [39] ¶ 71; [1]. Hartnett died in October 2023. [36] ¶ 32. Between the time of her discharge from the hospital and her death, Hartnett received home health care that cost a total of $301,060.97. [36] ¶ 32.

## III.    Analysis

Both sides argue that they are entitled to summary judgment on plaintiffs' breach of contract claim.[5] Plaintiffs also argue that they are entitled to extracontractual damages and attorneys' fees.

### A.    Applicability of 50 Ill. Admin. Code § 2012.70

Plaintiffs argue that the Illinois administrative code required Jackson National to reimburse Hartnett's home health care. To the extent that their opening brief argues this as a standalone claim, they have disclaimed that it is a standalone claim in their reply brief. [38] at 5. Instead, they argue that Jackson National breached the insurance contract that incorporated the regulation as a matter of law. [38] at 5.

In Illinois, insurance disputes are governed by general contract principles. *Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 660 (7th Cir. 2020). However, because insurance policies are a "distinctive type of contract, questions of policy

---

[5] I have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2): Lorrayne Hartnett was a citizen of Illinois. [1] ¶ 4. Jackson National is a citizen of New York and Michigan. [1] ¶ 5. The amount in controversy exceeds $75,000, exclusive of costs and interest. [1] ¶¶ 21, 23; [33] at 12; [36] ¶ 32. "[J]urisdiction once properly invoked is not lost by developments after a suit is filed, such as a change in the state of which a party is a citizen that destroys diversity." *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010). When a federal court sits in diversity, the forum state's choice-of-law rules determine what state's law applies to the issues before it. *Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022). Under Illinois choice-of-law rules, the forum state's law applies unless there is an actual conflict with another state's law shown by a party, or the parties agree that forum law does not apply. *Id.*; *see also Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14 (2014) (a choice-of-law analysis is only required where a party shows that a difference in law will make a difference in the outcome of the case). The parties both apply Illinois law. There is no need for an independent choice-of-law analysis.

interpretations are subject to special rules that account for the type of coverage purchased, the nature of the risks involved, and the overall purposes of the policy." *Id.* When suing an insurer over a denial of coverage, the insured has the burden of proving the existence of coverage and that her loss falls within the terms of her policy. *ABW Dev., LLC v. Cont'l Cas. Co.*, 2022 IL App. (1st) 210930, ¶ 26 (1st Dist. 2022). In interpreting Hartnett's insurance policy, my "primary objective is to ascertain and give effect to the intent of the parties to the contract." *Id.* (quoting *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292 (2022)).

The Illinois Administrative Code prohibits any long-term care insurance policy that "provides benefits for home health care or community care services" from limiting or excluding benefits by "requiring that the insured/claimant first or simultaneously receiv[e] nursing and/or therapeutic services in a home or community or institutional setting before home health care services are covered." 50 Ill. Admin. Code § 2012.70(a)(2).[6] This provision applies to all long-term care insurance policies

---

[6] "Community care services," unlike "home health care," is not defined in either the Illinois regulations or statutes governing long-term care insurance policies. The term "home and community-based services" is defined in the Illinois regulations implementing Medicare and Medicaid as "a variety of person-centered medical and social services delivered in the home and in community settings to address the needs of individuals with functional limitations who require assistance." 89 Ill. Admin. Code § 141.110. In the Medicaid context, nursing home care is different than home- and community-based care. *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 601 (7th Cir. 2004) (discussing state programs "designed to provide home- and community-based services to persons who would otherwise have to be cared for in nursing homes or other institutions"); *see also Vaughn v. Walthalol*, 968 F.3d 814, 817 (7th Cir. 2020) ("The A&D waiver program is intended to facilitate care in both home- and community-based settings for those who would otherwise need to be institutionalized."); 305 ILCS 5/5-1.1 (Illinois Public Aid Code defining "institutionalized person" as an individual who is an inpatient at a nursing facility). Read in light of this context, care in a nursing facility does not fall under either "home health care" or "community care" services.

delivered or issued for delivery on or after June 15, 1990. 50 Ill. Admin. Code § 2012.20. Each renewal of an insurance policy is considered a new contract for purposes of incorporating Illinois law into the policy. *Elson v. State Farm Fire & Cas. Co.*, 295 Ill.App.3d 1, 7 (1st Dist. 1998); *Eipert v. State Farm Mut. Auto. Ins. Co.*, 189 Ill.App.3d 630, 637 (5th Dist. 1986), *aff'd*, 116 Ill.2d 305 (1987). This includes regulations. *See, e.g.*, *Sigler*, 967 F.3d at 661. Hartnett renewed her policy each year by paying the premium. [32-1] at 2. The regulation was incorporated into her policy.

A benefit is the "amount the insurance company pays for covered services." Nat'l Assoc. of Ins. Comm'rs, *A Shopper's Guide to Long-Term Care Insurance*, at 28 (rev. 2019), available at https://perma.cc/BV22-FA4T. The National Association of Insurance Commissioners[7] explains "alternative care" "means that an insurer is willing to consider a type or place of care not specifically referenced in the policy." *Id.* "Generally, the insurer is agreeing only to consider such an alternative and the contract language may require the alternate care to be less expensive." *Id.*

Hartnett's policy guaranteed that Jackson National would pay for nursing care in a nursing care facility and assisted living facility. [32-1] at 7–8. But home care or community care was not a guaranteed benefit under the policy. The "alternative plan of care" benefit allowed Hartnett to negotiate medical and non-medical alternatives to "end confinement in a Nursing Care Facility and continue recovery at home or in another type of facility." [32-1] at 6, 8. Payment under the alternative plan of care

---

[7] The members of the National Association of Insurance Commissioners are the chief insurance regulators in all fifty states, the District of Columbia, and five U.S. territories. Nat'l Assoc. of Ins. Comm'rs, *A Shopper's Guide to Long-Term Care Insurance*.

was contingent not only on the insured receiving existing benefits for a nursing care facility but also on a trilateral agreement to pursue a home care alternative, [32-1] at 8:

> We will pay the Alternative Plan of Care Benefit if:
>
> 1. You are receiving benefits under this policy pursuant to a plan of care prescribed by a Licensed Health Care Practitioner; and
> 2. You, your Licensed Health Care Practitioner and we agree that an Alternative Plan of Care is: (a) medically acceptable; and (b) the most cost efficient manner in which to provide benefits for your claim under this policy; and
> 3. You have not exceeded the Benefit Period or Maximum Total Lifetime Benefit shown in the Benefit Schedule; and
> 4. You have satisfied the Elimination Period shown in the Benefit Schedule; and
> 5. You are not receiving payments for any other benefits under this policy.

There is "flexibility inherent in the concept of an alternate plan of care." *Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1320 (10th Cir. 2009). An alternative plan of care benefit's "touchstones are flexibility and negotiability, not guaranteed benefits." *O'Keeffe v. Cont'l Cas. Co.*, 825 Fed. Appx. 306, 311 (6th Cir. 2020). The benefit is "largely bereft of substance, its terms to be negotiated," and it "comes into effect only if its terms are mutually agreed upon by the policy holder, her physician, and" Jackson National. *Id.* This flexibility can be beneficial to both the insurance company and the insured but also means the benefit does not guarantee anything specific. *Id.* Essentially, the alternative plan of care benefit entitles Hartnett "to an opportunity to negotiate [home health care benefits], but not a unilateral right to"

10

them. *Id.*; *see also* Nat'l Assoc. of Ins. Comm'rs, *A Shopper's Guide to Long-Term Care Insurance*, at 28.

The plaintiffs must show that home health care services existed in the policy and that the costs of home health care fell within the terms of Hartnett's policy. *ABW, Dev.*, 2022 IL App (1st) 210930, at ¶ 26. Nowhere in Hartnett's policy are home health care services specifically covered. The policy does guarantee that Jackson National would pay for an alternative plan of care under certain conditions. [32-1] at 8. This care could include either medical or non-medical alternatives. [32-1] at 6. What type of services *might* be covered is not described in the policy, and so plaintiffs cannot show that the costs for home health care fell within the explicit terms of the policy. *ABW, Dev.*, 2022 IL App (1st) 210930, at ¶ 26. Instead, what is guaranteed is that Jackson National promised to pay for alternatives to nursing care *if* Hartnett was already receiving benefits and she, her doctor, and Jackson National agreed on a medically acceptable and cost-efficient alternative plan of care. The benefit is not for Jackson National to pay for home health care, but for Jackson National to pay for home health care that is medically acceptable and cost-efficient if Hartnett is already in nursing care.

Hartnett's policy does not provide for "benefits for home health care or community care services." It provides for an opportunity to convince Jackson National to pay for medically acceptable and cost-efficient alternatives to nursing care facility services. The regulation, 50 Ill. Admin. Code § 2012.70, applies only to policies that

provide home health (or community) care benefits. It does not apply in this case. Jackson National did not breach the contract in failing to abide by the regulation.

### B.    Breach of covenant of good faith and fair dealing

Plaintiffs also argue that Jackson National breached the contract by violating its duty of good faith and fair dealing by refusing to consider the alternative plan of care submitted by Hartnett's physician. [33] at 7–8. "[E]very contract contains an implied covenant of good faith and fair dealing." *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 28 (1st Dist. 2021). Where a contract vests one party with discretion in performing a term of the contract, the covenant of good faith and fair dealing requires the discretion be exercised "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id.* (quoting *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill.App. 160, 165 (2004)). "[A] party who does not properly exercise contractual discretion breaches the implied covenant of good faith and fair dealing that is in every contract." *Id.* (quoting *Mid-West Energy Consultants*, 352 Ill.App. at 165). To prove a breach of this covenant, a plaintiff must show the "existence of contractual discretion." *McCleary v. Wells Fargo Sec., LLC*, 2015 IL App (1st) 141287, ¶ 19 (1st Dist. 2015). "Parties to a contract…are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." *N. Tr. Co. v. VIII S. Mich. Assocs.*, 276 Ill.App.3d 355, 367 (1st Dist. 1995).

Here, plaintiffs argue that Jackson National breached its duty of good faith and fair dealing because it refused to consider Sheridan's alternative plan of care, including his recommendation that home health care was medically acceptable and the most cost-efficient manner of providing benefits. But the express terms of the contract require Hartnett to be currently receiving benefits under the policy before Jackson National must pay any alternative plan of care benefit. While Jackson National had discretion to agree (or not) with Hartnett and her physician that the alternative plan of care was both medically acceptable and the most cost-efficient way to provide benefits, it had no discretion to determine whether Hartnett was receiving benefits. Because there is no dispute that she was not, she was not entitled to any discretionary alternative plan of care benefits. The implied covenant of good faith and fair dealing cannot modify that express portion of the contract. *Id.*

Plaintiffs argue that the COVID-19 pandemic and Hartnett's age and health conditions created a "significant risk of serious illness or death [that] should mitigate a strict reading of an insurance policy." [33] at 10. The insurance company's heartlessness—disappointing, but hardly a surprise—does not change that Illinois law requires a "strict reading" of contract language. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) ("[C]ourts will not distort the language of a policy to create an ambiguity where none exists.") (internal quotations omitted). Because the language in the policy on the alternative plan of care benefit is unambiguous that it only applies when an insured is already receiving benefits—i.e.

13

already confined in a nursing care facility—Jackson National is entitled to judgment as a matter of law.[8]

## C.    Impracticability and Frustration of Purpose

Plaintiffs also invoke the doctrines of impracticability and frustration of purpose. These doctrines are affirmative defenses to the enforcement of a contract. *55 Jackson Acquisition, LLC v. Roti Rests., LLC*, 2022 IL App (1st) 210138, ¶¶ 54, 56 (1st Dist. 2022). An affirmative defense "is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification, or other negating matters." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 477 n.1 (7th Cir. 2019) (internal quotations omitted). An affirmative defense must be raised in a responsive pleading. *Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004); Fed. R. Civ. P. 8(c). "[I]f a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived." *Castro*, 360 F.3d at 735.

The plaintiffs cite to no cases that show how these doctrines can be used as theories of liability by a plaintiff against a defendant. Plaintiffs fulfilled their side of the contract: Lorrayne Hartnett paid her premiums for over twenty years. *See* [36] ¶ 6; [39] ¶ 6. An affirmative defense excuses performance, even if all the allegations in the complaint are true. It is not a theory of liability, but an avoidance of liability.

---

[8] And, as discussed above, because the policy was not one that provided home health or community care benefits, the Illinois regulation did not apply to prohibit the insurer from conditioning payment on a transition from an institution.

14

*Reed*, 915 F.3d at 477 n.1. Because the plaintiffs are not avoiding liability, these defenses are not applicable.

Even if the defenses could be used as a theory of liability, plaintiffs did not raise this argument in the complaint. Affirmative defenses must be raised in the pleadings. *Castro*, 360 F.3d at 735. Because plaintiffs did not raise the doctrines of impracticability or frustration of purpose in their complaint, the use of these doctrines is waived. *Id.* The plaintiffs cannot prove breach of contract based on impracticability and frustration of purpose.

### D. Extracontractual damages and attorneys' fees

Plaintiffs argue that they are entitled to extracontractual damages and attorneys' fees pursuant to 215 ILCS 5/155. The statute authorizes an award of fees and additional penalties against an insurance company for its vexatious and unreasonable claims handling. It "supplements the remedies otherwise available in an action for breach of contract." *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 519 (7th Cir. 2025). A plaintiff must show not only that the insurer caused a "vexatious and unreasonable" delay in settling her claim but also prove that the insured breached the contract in some other way. *Id.* at 519–20. Because Jackson National did not breach the contract, plaintiffs are not entitled to statutory damages under 215 ILCS 5/155.

15

## IV. Conclusion

Plaintiffs' motion for summary judgment, [31], is denied. Jackson National's motion for summary judgment, [34], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 16, 2025